UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ANDREW S. ANDERSON, Ph.D., M.D.    :      CASE NO. 1:05CV01342
                        :
          v.              :
                        :
RELIANCE STANDARD LIFE        :
INSURANCE COMPANY           :

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Reliance Standard Life Insurance Company (Reliance Standard), by and through its

undersigned counsel, hereby files its Motion for Summary Judgment and in support, alleges:

      1.      Andrew Anderson (plaintiff) was employed as an anesthesiologist with Medical

Faculty Associates, Inc. (MFA) and last worked in this capacity on July 9, 2002.  (AR 282).[1]

      2.      Plaintiff claimed long term disability, effective July 10, 2002 due to "burning

bilateral foot pain, also known as reflex sympathetic dystrophy [(RSD)]."  (AR 282).

      3.      Plaintiff's condition arose after an April 10, 1999 motor vehicle accident and he

received disability benefits immediately following the accident, but returned to work in his

regular occupation before he again stopped working and made this current claim of disability.

Complaint, ¶ 9, (AR 282).

      4.      Plaintiff's current claim was paid, however, benefits were discontinued because

plaintiff was no longer Totally Disabled.  (AR 23-27).

      5.      There is no dispute that the long term disability policy at issue is part of MFA's

employee welfare benefit plan and that plaintiff's claim is governed by the Employee Retirement

---

[1] All "AR" references are to the Administrative Record, a copy of which is attached as Exhibit "A".  The Administrative Record has been redacted to limit sensitive information, such as, partial dates of birth, social security numbers, home addresses and telephone numbers, as well as the first name of any minor individual referenced within the Administrative Record.

Income Security Act of 1974 (ERISA), 29 U.S.C. §§1001, *et seq.*  A copy of the policy is

attached hereto as Exhibit "B."

6.    Relevant to plaintiff, a Class 3 Employee, the Policy reads:

"Totally Disabled" and "Total Disability" mean, with respect to Classes 1 and 3, that as a result of an Injury or Sickness during the Elimination Period and thereafter, an Insured cannot perform the material duties of his/her regular occupation;

(1)    "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time bases or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and

(2)    "Residual Disability" means being Partially Disabled during the Elimination Period.  Residual Disability will be considered Total Disability.

Exhibit "B," p. 2.1.

7.    The policy also reads:

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.  Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Exhibit "B," p. 6.0).

8.    Although plaintiff claims disability due to RSD, his employment and medical

records reveal that plaintiff worked with this condition prior to claiming disability.

9.    Plaintiff identified no change in his condition on or about the date of loss, which

would render him Totally Disabled.

10.    Reliance Standard did pay plaintiff's claim until April 2004; however, as

discussed in the accompanying Brief, the payments were made in error based on a report that

plaintiff was capable of working 8-hour days, but with 2-hour breaks.  (AR 86).

11.    Upon review, plaintiff's ability to work 6 hours a day was never consistent with Total Disability because the policy defines Full-time as 30 hours per week.  See Exhibit "B," p. 2.0.

12.    Reliance Standard does not seek reimbursement of any benefits erroneously paid to plaintiff but seeks judgment in its favor on plaintiff's claim to additional benefits.

13.    In support of his claim, plaintiff relies heavily on the conclusion of his treating physician,  J. El-Bayoumi, M.D. that plaintiff is Totally Disabled.  (AR 92).

14.    However, Reliance Standard reasonably rejected the conclusions of Dr. El-Bayoumi, as he repeatedly made erroneous reports of plaintiff's medical condition, exemplified by his report of a mental/nervous condition when none existed and his report of chronic back pain that plaintiff specifically rejected.  (AR 493, 458, 381-383, 368-370, 331, 496, 92, 20).

15.    Throughout the course of this claim review, Reliance Standard obtained one independent psychiatric evaluation, one independent medical examination and two peer reviews; each of which support the conclusion of Reliance Standard that plaintiff is not entitled to additional benefits. (381-383, 368-370, 82-86, 447-452, 334-336, 327, 338).

16.    Moreover, Reliance Standard review the reports of plaintiff's medical treatment, which likewise do not support the claim.

17.    Reliance Standard's decision to discontinue benefits is reasonable and should not be disturbed.

WHEREFORE, Reliance Standard Life Insurance Company respectfully requests that this Honorable Court enter judgment in its favor and against plaintiff, on all claims.


TAYLOR, SYLLA & AGIN, LLP

BY: _____|§|_____
          Jean-Marie Sylla, Esq., DC Bar No. 469731
          1220 Nineteenth Street, NW
          Suite 501
          Washington, DC   20036
          Telephone: 202.689.8990
          Facsimile: 202.689.8998

Date:  April 17, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ANDREW S. ANDERSON, Ph.D., M.D.  :  CASE NO. 1:05CV01342
                                 :
              v.                 :
                                 :
RELIANCE STANDARD LIFE           :
INSURANCE COMPANY                :


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    Introduction

       Andrew Anderson was an anesthesiologist with Medical Faculty Associates, Inc. (MFA)

until July 10, 2002, when he  stopped working and claimed disability due to injuries from a

motorcycle accident he sustained three years earlier.  Complaint, ¶ 9, (AR 282).[1]  Following the

1999 accident, plaintiff submitted a claim for disability while he recovered from his injuries and

benefits were paid until plaintiff returned to work.  That initial claim is not in dispute.  However,

when plaintiff again stopped working on July 10, 2002, he submitted a second claim to Reliance

Standard Life Insurance Company (Reliance Standard), as insurer of the long term disability

Plan.  Benefits were paid for a period of time for the second claim but after a thorough review,

including an IME and peer reviews, Reliance Standard concluded that plaintiff is not entitled to

additional benefits.

       The policy provides benefits only in the event of a Total Disability.  Plaintiff's disability,

if any, did not continue beyond April 6, 2004.  Although plaintiff claims disability in part due to

_____

[1] All "AR" references are to the Administrative Record, Exhibit "A" to Reliance Standard's
Motion for Summary Judgment.

RSD and in part due to "unspecified injuries," Reliance Standard conducted a thorough review of all records. As discussed below, those records fail to demonstrate a continuing Total Disability. In fact, it does not appear that plaintiff was even entitled to the benefits paid through April 2004. Those benefits were paid while Reliance Standard investigated the claim and the various conditions in plaintiff's medical records. Reliance Standard does not seek repayment of any benefits paid in error. It seeks summary judgment in its favor on plaintiff's claim for additional benefits because plaintiff was not Totally Disabled beyond April 2004.

II.    <u>Factual History</u>

The policy provides benefits only in the event of a Total Disability and as applicable to plaintiff, Total Disability is defined as an inability, due to an Injury or Sickness, to perform the material duties of his regular occupation. Exhibit "B," p. 2.1. During the course of the claim, Reliance Standard received several records, identifying the material duties of plaintiff's occupation as an anesthesiologist. Plaintiff detailed his duties as "moving adult patients, providing anesthesia services, moving quickly between hospital locations to respond to trauma, obstetric, and airway emergencies, hands-on operating room teaching." (AR 283). Plaintiff's employer, however, identified a less demanding physical requirement, indicating that plaintiff's occupation required him to push/pull up to 25 pounds and lift/carry up to ten pounds. (AR 280). Reliance Standard also consulted the Department of Labor's Dictionary of Occupational Titles (DOT) which described the duties of an anesthesiologist and classified it as a light level occupation, consistent with the report of MFA. (AR 317, 280). According to the DOT, the following are the major duties of the occupation:

1.    Examines patient to determine degree of surgical risk, and the type of anesthetic and sedation to administer, and discusses his findings with medical practitioner concerned with case.

2.    Positions patient on operating table and administers local,
intravenous, spinal, caudal, or other anesthetic according to
prescribed medical standards.

3.    Institutes remedial measures to counteract adverse reactions
or complications.

4.    Records type and amount of anesthetic and sedation
administered and condition of patient before, during and
after anesthesia.

(AR 316).  As evidenced by his own work history, his medical records and the reports of an

independent examination and two peer reviews, plaintiff was capable of performing the duties of

his own occupation when benefits were discontinued.

Plaintiff's initial claim arose after an April 10, 1999 accident, however, he returned to

work and the current claim was submitted with a reported July 9, 2002 date of loss.  (AR 282).

Reliance Standard reviewed the records of plaintiff's medical treatment, including treatment

prior to the reported date of loss.  According to a November 2, 2000 record from Marc Loev,

M.D., plaintiff was diagnosed with left lower extremity chronic regional pain syndrome and

hypertension.  (AR 422-423).  He recommended that plaintiff receive a replacement spinal cord

stimulator and noted that an initial trial of this device resulted in *70 to 80 percent relief of*

*plaintiff's pain*.  (AR 422).  On follow-up with Dr. Loev in March, 2001, two months following

the placement of the spinal cord stimulator, plaintiff reported *50 to 60 percent pain relief*.  (AR

416).  By March 22, 2001, plaintiff's medication was decreased and he was reportedly

"extremely pleased" and believed that this procedure "*has enabled him to continue working on a*

*full-time basis.*"  (AR 416) (Emphasis added).  Dr. Loev commented that plaintiff no longer had

any cognitive impairment and confirmed that plaintiff was *continuing to work full-time and*

*looking for other activities in which to participate*.  (AR 416).

Plaintiff was again seen eight months later, in November, 2001 at which time he reported approximately *50 to 60 percent pain relief*. (AR 413). In February, 2002, just five months before he stopped working, plaintiff again reported approximately *60 percent relief of his pain with his spinal cord stimulator*. (AR 412). At that time, he was complaining of restless leg syndrome, but reported that he was nonetheless able to continue working full-time, still looking for other activities in which to participate, and pleased with his treatment. (AR 412).

On July 9, 2002, while in the operating room plaintiff had a single fainting episode and as a result, he and his employer discontinued his operating room duties. (AR 282). This is the date on which plaintiff stopped working and made the current claim for benefits. (AR 282). However, this fainting episode was not reported as the basis for the disability claim. (AR 282). Instead, plaintiff reported that he was unable to work because of chronic pain, loss of balance, and lower extremity weakness. (AR 282). One week after he stopped working, plaintiff underwent a stress test that produced negative findings. (AR 468-471). Despite claiming disability, in September 2002 plaintiff fractured his clavicle when he hit a pothole while riding a bicycle. (AR 461, 475).

Records from October, 2002, revealed that plaintiff complained of dyspnea (*i.e.* shortness of breath) and was scheduled for a pulmonary function test and CT scan. (AR 475-476). The test results were not provided to Reliance Standard and following the submission of his claim, plaintiff instead reported that his major problem was RSD. (AR 127). Plaintiff had previously been working with RSD and did not demonstrate any change in this condition which would prevent him from working as of July 2002 or April 2004. In fact, after submitting the current claim, plaintiff reported continued "good relief from [his] spinal cord stimulator . . . ." (AR 93).

Other treatment records also show that plaintiff had pain relief sufficient to allow him to continue working. (AR 422, 416, 413, 412).

In May, 2003, plaintiff's physician J. El-Bayoumi, M.D. reported that plaintiff suffered from chronic back pain subsequent to the April, 1999 accident and that due to his back pain he could not stand for a prolonged period of time. (AR 496). Dr. El-Bayoumi completed another statement in June, 2003 indicating that plaintiff was unable to sit, stand, walk or drive at all. (AR 493). As noted above, however, plaintiff could indeed perform these physical tasks, as demonstrated by his return to work following the April 1999 accident.

Dr. El-Bayoumi reported on June 27, 2003 that plaintiff was extremely limited in his ability to relate to other people beyond giving and receiving instructions, his ability to complete and follow instructions, his ability to perform simple and repetitive tasks and his ability to perform complex and varied tasks. (AR 493). Based on this report, Reliance Standard reviewed the file to determine if plaintiff was disabled due to a mental/nervous condition. Reliance Standard obtained the medical records of James L. Griffith, a psychiatrist who performed a single consultation. (AR 458). Dr. Griffith dismissed any psychiatric impairment and noted that any symptoms displayed by plaintiff during the July 5, 2002 consultation were reasonable given his motor vehicle accident and injuries. (AR 458). She noted that no antidepressant treatment was recommended and that plaintiff did not suffer from depression. (AR 458). A March 2, 2004 independent psychiatric evaluation performed by James F.T. Corcoran, M.D., F.A.P.A., F.A.A.F.S. confirmed this conclusion and plaintiff has agreed that he suffers no psychiatric impairment. (AR 381-383, 368-370, 329).

As part of its review, Reliance Standard referred plaintiff's file to William Scott Hauptman, M.D., for a peer review. (AR 447-452). After a thorough discussion of plaintiff's

medical records, Dr. Hauptman noted plaintiff's "excellent clinical response to the spinal cord stimulator with good clinical control of pain and improvement of cognitive status." (AR 448). Dr. Hauptman further reported on the March 27, 2002 office note of Dr. El-Bayoumi, in which it was reported there was "no change" in plaintiff's chronic pain. (AR 449). The records likewise showed no change, other than the single fainting episode, on or about July 9, 2002.

Neither plaintiff's reported chronic pain nor any other physical condition caused a Total Disability. (AR 447-452). Dr. Hauptman considered records from Guillermo Gutierrez, M.D. (AR 450). Although Dr. Gutierrez reported that plaintiff most likely had asthma, there were no follow-up visits with Dr. Gutierrez and results of the pulmonary function test and CT scan were not provided, thus providing no basis to find an impairment due to an underlying pulmonary disease. (AR 450). Finally, Dr. Hauptman found no support in the medical records for the report of Dr. El-Bayoumi that plaintiff was unable to stand, sit, walk or drive due to back pain and noted the contradiction in this report with the earlier reports of plaintiff's progress. (AR 450-451). Further, as discussed below, on April 28, 2004, plaintiff himself disagreed with Dr. El-Bayoumi, stating that chronic back pain did not render him unable to practice and that he never complained of chronic back pain. (AR 329). Based on the records available at the time of his review, Dr. Hauptman provided an opinion to a reasonable degree of medical certainty that impairment was not supported. (AR 451).

Reliance Standard agreed with the conclusion of Dr. Hauptman. The records showed that plaintiff was not totally disabled. Despite his complaints, he was shown to be riding a bicycle after claiming disability. (AR 475). Moreover, his March 2003 medical records revealed that plaintiff was exercising daily. (AR 439). Likewise, on August 21, 2003, it was reported that plaintiff has lost 30 pounds due to exercise. This is in stark contract to Dr. El-Bayoumi's June

27, 2003 report that plaintiff could not sit, stand, walk or drive.  After its own review and consideration of Dr. Hauptman's report, Reliance Standard agreed and denied plaintiff's claim on September 22, 2003.  (AR 132-134).

Plaintiff appealed the determination.  (AR 128).  During the review process, Reliance Standard received additional records, including the October 9, 2003 decision of the Social Security Administration, denying plaintiff's claim for benefits.  (AR 312).  Further, on review, plaintiff identified Drs. El-Bayoumi and Berrigan as the best sources for information about his health issues.  (AR 92).  However, contrary to the report of Dr. El-Bayoumi, plaintiff reported that he never had back pain and reported that his disability is due to chronic foot pain and lower extremity weakness resulting from RSD.  (AR 92, 20).

As a result of plaintiff's appeal, Reliance Standard requested an independent medical examination (IME) which was conducted on November 18, 2003, by Charles H. Bonner, M.D. (AR 82-86).  Dr. Bonner specifically addressed plaintiff's report of persistent pain in his feet and poor balance.  (AR 82).  He noted that plaintiff has been treated with medication and with a spinal cord stimulator.  (AR 82).  Dr. Bonner concluded, after review of plaintiff's medical records and examination of plaintiff, that he was physically capable of performing sedentary to light level work.  (AR 86).  Although he noted that plaintiff and his treating physician agreed that plaintiff would stop giving anesthesia in the interest of patient care, he found no medical documentation to support this self-imposed restriction in the medical records.  (AR 86).  Even though Dr. Bonner was clearly of the opinion that plaintiff could return to work in a sedentary to light level occupation, Reliance Standard reinstated benefits, based on the notation that plaintiff

could work a full day with two hour breaks. (AR 313-400).[2] Reliance Standard, however, continued its review of this claim. (AR 400, 313). As discussed below, in retrospect, the award of benefits was erroneous.

On March 31, 2004, Dr. El-Bayoumi reversed his earlier report of emotional or psychiatric issues, but reported that plaintiff was disabled due to his physical complaints, despite the fact that a March 30, 2004 record revealed that plaintiff was still exercising on a treadmill for one hour at a rate of 4 miles per hour. (AR 331, 332). In his March 31st report, he referenced a March, 2001 procedure which helped control plaintiff's pain and further noted that plaintiff was taking medication that helped control his pain. (AR 330). He did not explain his support of plaintiff's claim, given the fact that his pain had been controlled with medication and surgical intervention. (AR 330). Although not documented elsewhere, Dr. El-Bayoumi reported that plaintiff was experiencing severe pain with prolonged periods of standing in the operating room, which would cause him to lie down two to three times per day in order to complete a shift at work. (AR 330). Dr. El-Bayoumi confirmed the single event that caused Plaintiff to stop working was the July, 2002 fainting episode. (AR 330). Dr. El-Bayoumi did not attempt to show how this single episode justified the claim of Total Disability. (AR 330).    When Reliance Standard received an April 16, 2004 supplemental report from Dr. Bonner, indicating that plaintiff has no physical impairment which would prevent him from performing the duties of his regular occupation, Reliance Standard discontinued benefits. (AR 35-36). Likewise, the waiver of premium benefit was discontinued. (AR 37-39).

Plaintiff appealed. (AR 329).

---

[2] Reliance Standard also provided life insurance coverage under the Plan and premiums for life coverage are waived in the event of Total Disability. As a result of the approval of plaintiff's disability claim, his request for a waiver of premium was also approved. (AR 42-43).

On appeal, Steven J. Feagin, M.D. performed an independent peer review of plaintiff's records. (AR 334-336). However, he found no basis for impairment. (AR 334). Contrary to the claim of disability, Dr. Feagin noted plaintiff's return to work following the April 1999 accident, lack of evidence of physical change on or about the date that plaintiff stopped working and noted physical capacity for sedentary and light level work. (AR 334).

In a follow-up review, during which he considered additional records received from Dr. El-Bayoumi, Dr. Feagin confirmed that his conclusions remained unchanged. (AR 3, 337). However, at the request of Dr. El-Bayoumi, Dr. Feagin participated in a telephone conference with Dr. El-Bayoumi. (AR 327, 338). During the conversation, Dr. Feagin noted plaintiff's return to work and performance of his job duties as factors contradicting the disability claim. (AR 327, 338). Dr. El-Bayoumi provided no information to suggest that Dr. Anderson was not performing the material duties of his occupation when he returned to work prior to submitting the current claim. (AR 338). When asked what changed on or about the date of alleged disability in July, 2002, Dr. El-Bayoumi indicated that plaintiff could not tolerate the standing requirement of his job due to severe pain; however, this conclusion is not supported by the record. (AR 338). Dr. Feagin disagreed and explained that the medical records and plaintiff's own description of his reported activities did not support an inability to stand. (AR 338). In speaking to Dr. El-Bayoumi, Dr. Feagin also addressed the issue that one acute episode of fainting does not demonstrate a Total Disability without any noted disagreement from Dr. El-Bayoumi. (AR 328). Supported by the records, Reliance Standard upheld its decision to discontinue benefits. (AR 338, 23-27).

III.    Legal Argument

      A.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be entered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* at 322, 2552. Factual disputes that are irrelevant or unnecessary are not material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

B.    Standard of Review

The review of an adverse benefit decision is generally subject to *de novo* review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, the policy in this case reads:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Exhibit "B," p. 6.0). Because the policy grants discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, an abuse of discretion standard must be applied. *See Id.*

Applying the abuse of discretion standard, the decision of the fiduciary is reviewed for reasonableness. *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (D.C. Cir. 1992). "If there is more than one action that is 'reasonable,' the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Block*,

952 F.2d at 1452.  A four-factor test is applied to evaluate whether a decision is reasonable.  *See*

*Donovan v. Carlough*, 576 F.Supp. 245, 249 (D.D.C. 1983), a*ff'd.*, 753 F.2d 166 (D.C. Cir.

1985).  Under this four-factor test, the Court must consider whether:

> (1)    The insurers interpretation is contrary to the language of
> the plan;
>
> (2)    Whether it is consistent with the plan's purposes;
>
> (3)    Whether it is consistent with the specific purpose of
> determining eligibility for the long-term total disability
> benefit; and
>
> (4)    Whether it is consistent with the prior interpretations by
> the insurer and whether the claimant had notice of the
> insurers interpretation.

*Id*. at 249.  However, each case must be viewed individually and the weight given to each factor

may vary according to the case because the application of the four-factor test is not formulaic.

*See Germany v. Operating Eng'rs Trust Fund of Washington, D.C.*, 789 F.Supp. 1165, 1168

(D.D.C. 1992).

Because Reliance Standard is both insurer and decision-maker, the Court must also weigh

any conflict of interest as a factor in determining whether there is an abuse of discretion.  *See*

*Bruch*, 489 U.S. at 115.  However, the mere presence of this conflict does not automatically

affect the standard of review.  *See Hamilton v. AIG Life Ins. Co.*, 182 F.Supp.2d 39 (D.D.C.

2002).  In *Hamilton*, the Court conducted its review to determine whether the conflict of interest

actually affected the decision-making process.  *Id*. at 44-46.  The implied conflict of interest

resulting from Reliance Standard's dual role did not impact the decision making process.  Rather,

the facts of the claim and the terms of the policy justify the discontinuance of benefits.

Therefore, discretion should not be lessened to any significant degree, if at all.

C.    Reliance Standard's Determination is Reasonable

Consistent with the four-factor test announced in *Donovan*, Reliance Standard properly interpreted the terms of the Plan, issued a determination that is consistent of the Plan, issued a determination that is consistent with the purpose of determining eligibility for long-term total disability benefits and issued a determination that is consistent with prior interpretations. Further, Reliance Standard is aware of no dispute over its interpretation of the terms of the policy. The sole dispute is whether Reliance Standard's discontinuance of benefits is reasonable. It is and the claim determination should be upheld.

The burden of demonstrating a Total Disability belongs to plaintiff. *See Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 494 (D.C. Cir. 1998). Plaintiff can not meet his burden because his claim is not supported by the medical records, his work history, the IME and/or peer reviews. Further, the conclusion of Dr. El-Bayoumi that plaintiff remained Totally Disabled is not binding on Reliance Standard. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Although considered, the conclusions of Dr. El-Bayoumi were reasonably rejected for the reasons discussed below. Reliance Standard's decision, however, is supported by plaintiff's demonstrated work history, his medical records, and the independent examination and peer reviews.

Plaintiff's work history does not justify the payment of additional disability benefits. The record shows that plaintiff recovered from injuries sustained in the April 1999 accident and in fact, returned to work until July 9, 2002. (AR 282). However, the complaints on which he bases his claim, specifically RSD, predate the alleged date of loss. (AR 412). The only change on or about July 9, 2002 was a single fainting episode which caused plaintiff and his employer to discontinue his operating room duties. (AR 282, 86). When plaintiff stopped working in July 2002, his claim was initially denied but later approved based only on a notation by Dr. Bonner

that plaintiff was capable of working 8 hours a day but with two hour breaks.  In retrospect, benefits should never have been issued to plaintiff.  This, because Dr. Bonner's report was not consistent with an inability to work full-time.

Reliance Standard's claim determination should be upheld because plaintiff's medical records simply do not support his claim of Total Disability.  Plaintiff was diagnosed with left lower extremity chronic regional pain syndrome and hypertension well before the current claim arose.  (AR 422-423).  Based on reports of 70-80% pain relief with an initial trial spinal cord stimulator, plaintiff underwent the placement of a spinal cord stimulator and consistently reported 50-60% pain relief.  (AR 412, 413, 416, 422).  Significantly, his pain was relieved to the extent that his medication was decreased and he was reportedly "extremely pleased" and on March 22, 2001 plaintiff believed that that this procedure "*has enabled him to continue working on a full-time basis*."  (AR 416) (Emphasis added).  In February 2002, plaintiff complained of restless leg syndrome, but reported that he was nonetheless able to continue working full-time, still looking for other activities in which to participate, and pleased with his treatment.  (AR 412).  However, RSD was still reported by plaintiff as the major problem causing total disability.  (AR 127).

The diagnosis of RSD is not proof of Total Disability and Reliance Standard may reasonably question the disabling effects of the condition.  *See Buford v. UNUM Life Ins. co. of America*, 290 F. Supp. 2d 92, 101-102 (D.D.C. 2003).  In *Buford*, the insurer questions "the existence, or at the very least the disabling effect" of the plaintiff's reported cervical spine degenerative disease.  *Id*. at 101.  The insurer based its determination on reports that the plaintiff was neurologically intact, that surgical intervention was successful and that she was not scheduled for follow-up.  *See Id*.  The insurer, viewing the record as a whole found no support

for the reports of disabling pain, based on plaintiff's medical records and the reports of independent reviews. *See Id.* Reviewing the insurer's file to determine whether the determination was reasonable (i.e. supported by substantial evidence), the court upheld the determination. Here, Reliance Standard has even more support that the insurer in *Buford*. The record not provides medical records that negate plaintiff's claim but also provides evidence that plaintiff actually worked with the very complaints that he claims are disabling. The record shows that plaintiff is capable of performing many more activities than either he or his treating physician will acknowledge. Total Disability has not been shown and as in *Buford*, the decision to discontinue benefits should be upheld.

Plaintiff worked with RSD and provided no proof of any change in his condition on or about the reported date of loss to justify a finding of Total Disability. Moreover, plaintiff was not able to demonstrate a Total Disability due to this condition in April 2004, when benefits were discontinued. Plaintiff relies on the conclusions of Dr. El-Bayoumi as support for his claim. However, Dr. El-Bayoumi's inconsistent reports reasonably cast doubt on his credibility. *See Mobley v. Continental Casualty Co.*, 405 F. Supp. 2d. 42 (D.D.C. 2005).

In *Mobley*, the court refused to accept the opinion of a treating physician merely because of his status as a treating physician. *Id*. at 48. Rather, the court gave equal weight to both treating and non-treating physicians, except where there was a reason to find one physician more credible than the other. *Id*. at 48. The court found that the opinions of the plaintiff's treating physician were not credible because the physician changed his report that plaintiff was capable of working to a conclusion of total disability without explanation or objective proof that his new finding was correct. *Id*. at 48-49. Similarly, Dr. El-Bayoumi has made several unexplained errors when reporting on plaintiff's conditions and limitations, such as his erroneous report of

plaintiff's inability to work due to chronic back pain. Even after plaintiff reported that he never had chronic back pain, Dr. El-Bayoumi continued to report Total Disability, but without explanation. His conclusions were reasonably rejected. Additional documents presented to Reliance Standard likewise failed to support plaintiff's claim.

After plaintiff fainted on July 9, 2002, plaintiff underwent a stress test but the results were negative. It was only after he fainted that plaintiff submitted a claim due to chronic pain, loss of balance and lower extremity weakness. (AR 282). Ironically, in September 2002, plaintiff fractured his clavicle when he hit a pothole while riding a bicycle. No explanation has been provided to explain why plaintiff was riding a bicycle to begin with, despite his complaints of loss of balance and lower extremity weakness. (AR 461, 475, 282).

In May, 2003, Dr. El-Bayoumi reported that plaintiff suffered from chronic back pain subsequent to the April, 1999 accident and that due to his back pain he could not stand for a prolonged period of time. (AR 496). One month later, he reported that plaintiff was unable to sit, stand, walk or drive at all. (AR 493). This report was completely contrary to the records that revealed that plaintiff was exercising daily and indeed capable of walking on a treadmill for an hour. (AR , 439, 438, 332). Dr. E-Bayoumi never explained the obvious inconsistencies in his own reports or plaintiff's return to work and demonstrated ability to continue working to July 9, 2002. Moreover, plaintiff specifically stated that he *never* had chronic back pain. (AR 329).

Ironically, on appeal plaintiff identified Drs. El-Bayoumi as one of the best sources for information about his health issues. (AR 92). However, Dr. El-Bayoumi's reports were repeatedly inconsistent with plaintiff's claim and the medical records. In addition to the examples provided above, Dr. El-Bayoumi, initially reported that plaintiff suffered from a cognitive impairment. (AR 493). This opinion was rejected by plaintiff, by Dr. Griffith, by Dr.

Corcoran and then later retracted by Dr. El-Bayoumi himself.  (AR 92, 458, 329, 458, 381-383, 368-370, 331). Despite the fact that he was identified as a source of support for plaintiff's claim and that he indeed concluded plaintiff was disabled, on appeal, Dr. El-Bayoumi reported that plaintiff's pain was being controlled with medication.  (AR 330).  Nonetheless, he reported that before plaintiff stopped working, he was experiencing severe pain with prolonged periods of standing in the operating room, which would cause him to lie down two to three times per day in order to complete a shift at work.  (AR 330).  This, however, is not supported by the record.  The consistent errors of Dr. El-Bayoumi provide a reasonable and sufficient basis for Reliance Standard to reject his conclusions of disability.

Ultimately, Dr. El-Bayoumi confirmed a single event as the cause of plaintiff's claim, the July 2002 fainting episode.  (AR 330).  However no explanation was provided to explain why this single episode justified the claim of disability.   (AR 330).  In fact, when Dr. El-Bayoumi participated in a phone conference with Dr. Feagin, he could provide no explanation for why plaintiff was previously able to return to work with the same symptoms, could not identify any record to support the claim that plaintiff could not tolerate the standing requirement of his job due to severe pain, and could not provide evidence of what changed, other than the fainting episode, to render plaintiff disabled in July 2002.  (AR 338).

Reliance Standard also reasonably relied on the reports of Dr. Hauptman, Dr. Bonner and Dr. Feagin.  Each of these physicians reviewed all records available at the time of their respective reviews.  Moreover, Dr. Feagin accepted Dr. El-Bayoumi's invitation to participate in a telephone conference, but no additional support was provided during the conference.

Dr. Hauptman thoroughly reviewed plaintiff's records.  (AR 447-452).  As Dr. El-Bayoumi later admitted, Dr. Hauptman concluded that the only change in plaintiff's condition

was the single fainting episode. (AR 447-452, 330). This was not the basis of the claim but it was still considered. Dr. Hauptman, however, found no support for the claim of disability due to fainting, RSD or any other condition. (AR 451).

Although it was the basis for the award of benefits, Dr. Bonner's IME report actually supported Reliance Standard's decision to discontinue benefits. Dr. Bonner reported that plaintiff was physically capable of performing sedentary to light level work. (AR 82-86). Dr. Bonner, a specialist in pain management and electromyography further found no support for the self-imposed restriction from performing his operating duties. (AR 82-86). He reported that plaintiff was capable of working 30 hours per week, which is full-time under the policy. (AR 86). This ability to work 30 hours a week (*i.e.* full-time) negates Total Disability and Reliance Standard is justified in not paying additional benefits.

Finally, Reliance Standard's determination is supported by the report of Dr. Feagin. (AR 334-336, 338). Like Drs. Hauptman and Bonner, Dr. Feagin found no basis for impairment. (AR 334). As noted above, Dr. Feagin not only reviewed plaintiff's records but also spoke with plaintiff's treating physician, who conceded that plaintiff's restrictions were the result of the single fainting episode and that nothing had changed in regard to plaintiff's other complaints, with which he worked prior to claiming disability. (AR338).

As noted above, Reliance Standard is not bound by the conclusions of plaintiff's physicians. Here, however, Reliance Standard fully considered those conclusions but found no support. To the contrary, Reliance Standard's decision to discontinue benefits is reasonable and is supported by the record.

IV.    <u>Conclusion</u>

Plaintiff's claim is clearly not supported by the record.  Reliance Standard's decision, however, is supported by the record.  Plaintiff is not entitled to additional benefits and summary judgment should be entered in favor of Reliance Standard.

TAYLOR, SYLLA & AGIN, LLP


BY: _____|§|_____
            Jean-Marie Sylla, Esquire
            1220 Nineteenth Street, NW
             Suite 501
            Washington, DC   20036
            Telephone: 202.689.8990
            Facsimile: 202.689.8998


Date:  April 17, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ANDREW S. ANDERSON, Ph.D., M.D.          :          CASE NO. 1:05CV01342
                                          :
          v.                              :
                                          :
RELIANCE STANDARD LIFE                    :
INSURANCE COMPANY                         :


<u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Reliance Standard Life Insurance Company hereby certifies that a true and correct copy of DEFENDANTS MOTION FOR SUMMARY JUDGMENT, MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PROPOSED ORDER were served on the following counsel of record, *via* mail.

Dawn E. Boyce, Esquire
Trichilo, Bancroft, McGavin,
   Horvath & Judkins, P.C.
3920 University Drive
Fairfax, VA 22030

Heather Holloway, Esquire
Rawle & Henderson, LLP
1339 Chestnut Street
One South Penn Square
The Widener Building, 16th Floor
Philadelphia, PA 19107


BY: _____|§|_____
                Jean-Marie Sylla, Esquire

Date:  April 17, 2006

1269364 v.1