IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW S. ANDERSON, Ph.D., M.D. | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No: 1:05-cv-1342 PLF DAR |
| | * |
| | * |
| RELIANCE STANDARD LIFE | * |
| INSURANCE COMPANY | * |
| | * |
| Defendant. | * |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  **Introduction**

Andrew Anderson was involved in a serious motorcycle accident on April 10, 1999. (AR 24).[1] At the time of the accident he was employed with Medical Faculty Association, Inc., as an anesthesiologist. (AR 28). Due to the severe disabilities from the accident, Dr. Anderson was granted long term disability benefits. Dr. Anderson returned to work on October 1, 1999. (AR 19). During this time, Dr. Anderson was still recovering from the injuries sustained in the motorcycle accident, however he had a strong desire to return to work. Dr. Anderson suffered from shortness of breath due to a lung injury and lower-body weakness. (AR 19). The most significant continuous pain was bilateral burning foot pain. (AR 19). The department where Dr. Anderson worked was very accommodating, allowing him to skip night duty, to lie down every

---

[1] Citations made to "Administrative Record" filed by defendant. Plaintiff disputes that the administrative record is true and complete.

1

few hours and to take liberal leave. (AR 19, 330).

On June 7, 2000 Dr. Anderson underwent surgery to have two electrical leads placed in his back for a spinal stimulator, which would assist in pain management. (AR 19, 330). On July 22, 2000, Dr. Anderson underwent emergency surgery to remove the wires because he was in septic shock. (AR 19, 330). In March of 2001, a spinal simulator was installed and Dr. Anderson began to get some much needed pain relief when he lay on his back. (AR 20). For over a year Dr. Anderson struggled to regain strength and suppress the pain, while attempting to establish his ability to remain a full-time employee. (AR 20). However, in July of 2002 Dr. Anderson fainted while administering anesthesia to a patient. (AR 20, 330). It was Dr. Anderson's doctor and employer, who concluded that Dr. Anderson was not physically capable of safely performing his job. (AR 20, 330-331). This episode, combined with the pain and consequences of his original injuries, reestablished Dr. Anderson's total disability and inability to perform his occupation of an anesthesiologist, despite his best efforts to do so and considerable accommodations by his employer.

## II. Facts

Dr. Anderson made a claim with Reliance Standard Life Insurance Company ("Reliance") following the April 10, 1999 accident. The claim was accepted and payments were made to Dr. Anderson until he returned to work. By July of 1999, Dr. Anderson was diagnosed with reflex sympathetic dystrophy ("RSD") evidenced by severe pain and a burning sensation in his feet and ankles. (AR 56). After the July 2002 fainting incident, Dr. Anderson made a request for reinstatement of benefits. (AR 288). This claim was ultimately accepted and paid. During the time which Dr. Anderson received benefits, the Defendant sent his medical records to Dr.

2

Hauptman for a peer review and opinion as to Dr. Anderson's condition. (AR 447). After reviewing the records it was Dr. Hauptman's opinion that Dr. Anderson had received excellent clinical response from the spinal stimulator. (AR 451). In reality, Dr. Anderson only realized fifty to sixty percent relief unlike the promised seventy to eighty percent improvement. (AR 448). Although this could hardly be deemed excellent improvement, Dr. Hauptman concluded that Dr. Anderson's medical records did not support any impairment due to chronic pain. (AR 132). Dr. Hauptman acknowledged that he had a report from Dr. Gutierrez. (AR 450). Dr. Gutierrez saw Dr. Anderson after the fainting spell and diagnosed him with an obstructive ventilatory defect related to his history and possible restrictive defect and asthma. (AR 476). Because Dr. Hauptman did not have Dr. Gutierrez's complete chart, he dismissed these findings as being insignificant to a finding of disability. (AR 450).

Based on Dr. Hauptman's report, Dr. Anderson's claim was denied on September 19, 2003. (AR 196). ERISA overturned this decision on December 10, 2003 based on an IME conducted on November 18, 2003 by Dr. Bonner. (AR 68, 196). Dr. Bonner concluded that Dr. Anderson was not able to work a full day and therefore met the definition of total disablement under the policy of insurance. (AR 68, 192).

Dr. Bonner, who was hired by Reliance, stated that Dr. Anderson had been restricted since July 10, 2002. (AR 54-58). In addition, Dr. Bonner found that Dr. Anderson was only able to stand for one to three hours and sit for only one to three hours. (AR 58). Dr. Bonner stated "[i]t is my opinion, based on review of the medical records and examination of the patient, that he is disabled from his current employment as of June 27, 2003." (AR 58). Despite this, in a letter from Reliance to Dr. Anderson's primary care physician dated December 8, 2003 a

Reliance representative stated that "it appears that Dr. Bonner, after reviewing records of treatment and performing an examination, is of the opinion that Dr. Anderson's condition should not have prevented him from continuing to work beyond July 2002" (AR 80). This amounts to a complete misstatement of Dr. Bonner's opinion.[2] It is clear after reviewing Dr. Bonner's report of November 18, 2003, that it was his opinion that Dr. Anderson was disabled. (AR 58).

Subsequently the Defendant requested a psychological IME, even though Dr. Anderson never made any claims for benefits due to a psychological disorder. Dr. Corcoran opined that Dr. Anderson was not suffering from any psychological impairment. (AR 365-367). On March 30, 2004, a Reliance representative requested that Dr. Bonner be contacted regarding an additional evaluation of Dr. Anderson. (AR 353). The request noted that Marianne P. Lubercht an RN employee of Reliance interpreted Dr. Bonner's IME to limit Dr. Anderson's disability to be "behaviorally based." (AR 353). The letter continued that Dr. Anderson underwent a psychiatric IME in March of 2004, which concluded that Dr. Anderson was unimpaired. (AR 353). Sixteen days later Dr. Bonner changed his opinion. (AR 341). Specifically, Dr. Bonner stated that Dr. Anderson's psychiatric limitations delineated in a note of June 27, 2003 "was the only record documenting Dr. Anderson's inability to perform his gainful employment." (AR 341). The opinion continued by stating that Dr. Anderson did not have an inability to stand, sit, walk, and drive. (AR 341). However, in his original IME Dr. Bonner determined that Dr. Anderson was only able to stand for one to three hours and sit for only one to three hours. (AR 58).[3] Without a physical examination, Dr. Bonner inexplicably recants his prior opinion stating,

---

[2] The fact that Dr. Bonner's report established disability is acknowledged by D. M. Hein with Reliance on December 9, 2003 (AR68) in the administrative record.

[3] Dr. Bonner's unbiased review is in dispute. There is a question whether he performed a complete physical examination (AR8-9) and questions about what records he actually reviewed as the medical records outlined in his

4

"Dr. Anderson has either recovered from the impairment of June 27, 2003 which disabled him, or the report was erroneous . . ." (AR 342).

Given that the psychiatric report did not address physical capability, it is unclear what parts of the psychiatric report caused Dr. Bonner to find that "Dr. Anderson has no physical impairment at this time to prevent him from practicing his usual employment as a physician." (AR 342). Even Reliance found Dr. Bonner had contradicted himself in his first report. (AR 68). In a letter to Dr. Anderson, it was stated that the information obtained from the IME[4] was conflicting. (AR 72). The letter states that a Functional Capabilities Evaluation will be conducted. (AR 72). A prescription was obtained for such an evaluation (AR 434), but the evaluation was never scheduled by Reliance.

Dr. Anderson was employed as an anesthesiologist. The Dictionary of Occupational Titles defines an anesthesiologist as one whom:

> Examines patient to determine degree of surgical risk, and type of anesthetic and sedation to administer, and discusses findings with medical practitioner concerned with case. Positions patient on operating table and administers local, intravenous, spinal, caudal, or other anesthetic according to prescribed medical standards. Institutes remedial measures to counteract adverse reactions or complications. Records type and amount of anesthetic and sedation administered and condition of patient before, during, and after anesthesia. May instruct medical students and other personnel in characteristics and methods of administering various types of anesthetics, signs and symptoms of reactions and complications, and emergency

---

report are not all included in the administrative record produced. AR 192). Note in particular the reference to U.Va. records reflecting a three-level laminectomy. (AR 56).

[4] Dr. Bonner IME November 18, 2003.

measures to employ.

DOT 070.101-010.

The Defendant claims that Dr. Anderson does not meet the policy definition of total disablement because he is capable of working. (Defendant's Motion for Summary Judgment). Dr. Anderson's occupation requires frequent standing, sitting and climbing stairs. (AR 280). Due to his RSD, Dr. Anderson cannot sit, stand or walk for more than one to three hours in an eight-hour day. (AR 58). Dr. Anderson cannot properly perform his job by alternating between sitting and standing. (AR 280).

Defendant makes much of the notion that Dr. Anderson can walk on the treadmill therefore he cannot be disabled. However, after walking on the treadmill Dr. Anderson must rest and elevate his feet. (AR 299). In fact, Dr. Anderson states that sitting is the most difficult activity. (AR 299). Dr. Anderson does receive some pain control, but only when he is in the supine position. Otherwise he must rely on medication while he is standing. (AR 330). Due to these restrictions, Dr. Anderson cannot perform his occupation because he cannot sedate and aid patients in emergency situations if Dr. Anderson is forced to lie on his back or else faint from the pain. (AR 330-331).

The Defendant conducted an additional peer review from Dr. Feagin. Dr. Feagin opined that nothing in the records nor the independent evaluations support the contention that Dr. Anderson cannot stand. (AR 26-27). However, Dr. Bonner already stated that Dr. Anderson could only stand one to three hours in an eight-hour day, as did Dr. El-Bayoumi. (AR 58, 330, 331). It would seem that the professional opinions of these independent examiners are in direct conflict.

6

On April 21, 2004, Reliance terminated Dr. Anderson's benefits effective April 6, 2004. In an attempt to determine the basis of denial, the administrative record and the policy were requested. (See Affidavit and attachments to Statement of Genuine Issues in Dispute). A policy was produced as well as a copy of documents purporting to be the claim file. Id.

This lawsuit followed. During the course of litigation, the policy of insurance was again provided but a second administrative record was produced. Id. It contained 44 additional pages. Id  Missing from both administrative records are reports from U.Va. and from Dr. Newell, both referenced in material which was produced. (See AR 56, 97). In February, the Defendant produced a new policy which it now asserts is the right one. (See Affidavit and attachments to Statement of Genuine Issues in Dispute). This policy was apparently not utilized during the claims process. (See AR 248-277, policy in original file, as compared to Exhibit B to Defendant's Motion for Summary Judgment.)

### III. Legal Standard of Review

#### A. Summary Judgment Standard

In ruling on a motion for summary judgment the court must determine first whether the moving party has met its burden of production: the movant must "inform the district court of the basis for its motion and identify those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Upon consideration of a motion for summary judgment; the court must draw all justifiable inferences in the non-movant's favor and all evidence of the non-movant is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

7

B.  **Standard of Review**

As a general proposition plans that fall in the purview of the Employee Retirement Income Security Act of 1974 are interpreted under a *de novo* review by the courts with no deference to either party. Booth v. Wal-Mart Stores Inc., 201 F. 3d 335, 340-341 (4th Cir. 2000). If the policy grants the administrator discretionary authority to determine benefit then the courts will apply the abuse of discretion standard. Id. at 341. A decision will be deemed reasonable only if it was the result of "a deliberate, principled reasoning process and it is supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

However, courts are split on whether to give full deference to the administrator's decision if there is some evidence of abuse. In Gunn v. Reliance Std. Life Ins. Co., 399 F. Supp. 2d 1095, 1103-1104 (D. Cal. 2005), the court stated that if the plan administrator is also the insurer, a different standard of review might apply because there might be a conflict of interest. This conflict of interest will alter the court's standard of review if the insurer cannot overcome the presumption of a conflict. Id. If competent evidence is presented to demonstrate that the conflict may have tainted the decision, and the insurer does not produce evidence to overcome this presumption, then the court reviews the administrative decision under the *de novo* standard. Id. *See generally*, Brown v. Blue Cross & Blue Shield, Inc., 898 F.2d 1556, 1570 (11th Cir. 1990) (court altered standard of review to reflect the apparent conflict, which resulted from insurers reversal of one decision but only after appeal was taken); Tremain v. Bell Indus., 196 F.3d 970, 979 (9th Cir. 1999) (court used *de novo* review because the insurer was unable to rebut the presumption of a conflict of interest).

Other courts have used a sliding scale approach or a heightened arbitrary and capricious

8

standard.[5]  Under the sliding scale approach the deference given to the administrator's decision is lessened to neutralize any possible influence due to the conflict. Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 87 (4th Cir. 1993); McKeldin v. Reliance Std. Life Ins. Co., 2006 U.S. Dist. LEXIS 16423, 26-28 (D. Md. 2006) (court applied the modified abuse of discretion standard because of the potential conflict, thus giving less deference to the administrative decision); Kaelin v. Tenet Emple. Ben. Plan, 405 F. Supp. 2d 562, 573 (D. Pa. 2005) (court used the sliding scale method which intensifies the degree of scrutiny proportional to the degree of conflict).

The District of Columbia circuit has not decided this issue. Hamilton v. AIG Life Ins. Co., 182 F. Supp. 2d 39, 44 (D.D.C. 2002).  In Hamilton the court determined that there was no conflict therefore there was no need to determine how a conflict would affect the standard of review. Id.  As this circuit has not yet decided this issue, Plaintiff suggests this Court should follow the *de novo* standard or at the least the sliding scale standard.  However, under any standard of review, Plaintiff submits summary judgment is not proper.

Due to the conflict of interest of having the file reviewed by the same company that will either provide or deny benefits this court should apply the *de novo* standard of review.  In addition to this conflict of interest, the administrative record is rife with conflicting opinions from different "medical expert"; the decision to deny coverage was based on a policy that Defendant not contends was not controlling; and the integrity of the administrative record is in question due to the production of two different versions of the record.

---

[5] These courts review the facts presented to the administrator under a high degree of skepticism.

All of this calls for this Court to use the *de novo* standard of review for the administrative ruling. At the very least, this Court should show little deference to the administrative ruling.

### IV. Defendant's Motion for Summary Judgment Must Be Denied For Procedural Defects as Well As Material Factual Disputes.

Summary Judgment should be denied for three reasons. First, the Defendant has failed to comply with United States District Court for the District of Columbia Local Rule 7(h), by failing to provide this Court with a statement of undisputed facts, this error alone is sufficient for this Court to deny summary judgment. Second, there is an outstanding request for discovery and motion for protective order before this Court, therefore this motion for summary judgment is premature. Third, there are factual disputes with regard to the administrative record, with the interpretation of the plan and the apparent conflict of interest that would preclude summary judgment.

#### A. Summary Judgment must be Denied Because the Defendant's Motion Violates the Local Rules.

The Defendant has filed a motion for summary judgment but has not included a separate section of undisputed facts. An undisputed facts section is required by Local Rule 7(h) which states as follows:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied upon to support the statement. . . . In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

LCvR7(h) (2006).

In this case, the Defendant has not filed a separate section of undisputed facts. Instead,

10

the Defendant mixes facts with argument in the Factual History section of the Memorandum in Support of its Motion for Summary Judgment.[6] The purpose of the rule is to "assist the Court in quickly determining which facts are actually in dispute and which facts are without support." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 153 (D.C. Cir. 1996). The Defendant's factual history creates confusion not clarity and does not allow this Court to quickly determine the undisputed facts. In addition, it creates an undue burden on the opponent. It would be impossible for the Plaintiff in this case to comply with the local rule requirement of refuting the alleged undisputed facts.

It would be proper for this Court to deny the Defendant's motion based solely on failing to comply with the local rules. *See generally*, Robertson v. American Airlines, 239 F. Supp. 2d 5 (D.D.C. 2002) (court struck Defendant's motion for summary judgment because Defendant failed to comply with Local Rule 7 because the "statement of material facts not in genuine dispute" improperly mixed factual allegations with argument); Siegel v. Klingle Corp., 2002 U.S. Dist. LEXIS 15208 (D.D.C. 2002) ("Defendant totally failed to comply with this requirement by not submitting a Local Rule 7.1 statement. The Court could deny summary judgment on that basis alone.").

Therefore, since the Defendant failed to comply with the local rules and this noncompliance is highly prejudicial to the Plaintiff's ability to properly respond, this Court should deny the Defendant's motion for summary judgment.

---

[6]This section comprises nine (9) pages of facts mixed with argument.

11

## B. Motion for Summary Judgment is Premature Because Outstanding Motions Could Disclose Additional Facts That Would Create Additional Issues.

The Plaintiff has noticed the depositions of Karen McGill and Dr. Charles H. Bonner. In response, the Defendant filed a motion for protective order. The Plaintiff has opposed this motion. As of this opposition, this Court has not ruled on the Defendant's motion for protective order.[7] This motion for summary judgment is premature because the depositions of Dr. Bonner and Ms. McGill would reveal facts, which will support Plaintiff's contention, that material facts are in dispute that cannot be resolved on summary judgment.

It is proper to deny summary judgment when discovery is still outstanding. First Chicago International v. United Exchange Co., 836 F.2d 1375, 1379 (D.C. Cir. 1988). In *First Chicago*, the Appellate court reversed the district court's grant of summary judgment because it was premature. Id. Specifically, the court noted that the deposition of a key individual was noticed but not yet taken. Id. In addition, the court noted that the Plaintiff's failure to file a Rule 56(f) affidavit requesting a stay until further discovery was taken was not fatal because the Plaintiff vehemently opposed the Defendant's motion for summary judgment. Id. at 1380. *Accord*, Page v. Pension Benefit Guaranty Corp., 968 F.2d 1310 (D.C. Cir. 1992) (court stated that summary judgment was premature when doubt was cast on the reliability and finality of an agency decision).

In this case, Dr. Bonner's deposition was requested so he could clarify several troubling issues in regards to the administrative record. First, there is a reasonable dispute as to whether Dr. Bonner ever physically examined the Plaintiff. In addition, Dr. Bonner allegedly reviewed

---

[7] The hearing on the motion for protective order has been set for May 10, 2006.

medical files that were not part of the administrative record. Finally, Dr. Bonner originally opined that the Plaintiff was disabled; after some communication from Reliance and a subsequent psychiatric IME Dr. Bonner changed his opinion without considering the previous physical limitations that he relied on to formulate the earlier opinion. These inconsistencies need to be rectified. It is inevitable that more facts will surface after the deposition, which will reveal additional support to render summary judgment improper.

The deposition of Ms. McGill was noted because she played a substantial role in the decision not to provide coverage for the Plaintiff. There are several questions as to whether Ms. McGill had the proper information to make this important decision. Specifically, there is a material dispute regarding which policy of insurance was used for the coverage determination. There are two different policies that have been provided by the Defendant. There are differences between the two policies, including the enumeration of different classes of beneficiaries. The Plaintiff should be able to pursue the investigation of which policy was used to make the final determination. At all times prior to receiving the second policy Plaintiff believed the first policy controlled. Now, the Defendant states that the second policy controls.

In addition, Ms. McGill would need to respond to Plaintiff's assertion that the administrative record has been compromised. Specifically, the record supplied to Plaintiff is not the same record as that supplied to the Court. In fact, there are forty-four (44) additional pages in the subsequent filing. The variance in the record initially provided and the record subsequently provided establishes a conflict that must be rectified through the questioning of Ms. McGill.

Therefore, as in Page and First Chicago, summary judgment is premature at this stage

13

because the finality and completeness of the administrative review process has been called into question. This Court has not ruled on the protective order and thus summary judgment is premature. Therefore, this Court should deny the Defendant's motion for summary judgment.

### C. Material Facts are in Dispute Which Preclude Summary Judgment.

Genuine issues of material fact exist which preclude summary judgment. There are factual disputes regarding the integrity of the administrative record. There are several inconsistencies as to why coverage was initially provided and then subsequently denied. The administrative record reveals facts which suggest that the doctors' opinions were influenced, the interests of the company outweighed that of the insured, and a full review was not properly conducted.

The Defendant states that this court is limited to the four-factor test developed in Donovan v. Carlough, 576 F.Supp, 245, 249 (D.D.C 1983). However, those factors were used to determine the appropriateness of the insurer's interpretation of a clause in the policy. For claims that involve more than just the interpretation of the policy language, such as the conflicting determinations, the conflicting administrative record and the conflicting evidence, the courts use a reasonableness standard[8]. In this case, the decision to deny benefits to Dr. Anderson was not reasonable because it was based on inconsistent and implausible opinions, the wrong policy, an incomplete administrative record, and substantial evidence that Dr. Anderson is totally disabled.

During the course of discovery Plaintiff was provided with a copy of the policy of insurance. It is this policy that the plan fiduciary utilized to determine coverage issues. In this case, Dr. Anderson was originally provided coverage after the July 22, 2002 incident.

---

[8] This Court should conduct its review using either the de novo standard or the sliding scale approach adopted by the Fourth Circuit, however Plaintiff's argument against summary judgment in this section will use abuse of discretion.

Subsequently, the insurer discontinued payments to the insured because the insurer believed Dr. Anderson was not disabled. However, after filing suit Plaintiff was provided another copy of the policy of insurance. This policy is different than the policy previously provided, and includes a class of beneficiaries not present in the original policy produced.

This is an important issue because as Ms. McGill, a representative of Reliance stated, "we are limited by the provisions of the policy." (AR 27). It is the policy that determines if there is coverage, surely the Defendant would need the proper policy before beginning the interpretation process. There is a factual question as to which policy of insurance out of the two provided to the Plaintiff applied to the determination that resulted in the denial of benefits. This is just one instance, which demonstrates the unreasonableness of the Defendant's decision-making process. The Defendant cannot provide the proper policy of insurance which was used to deny coverage, nor has been able to identify the administrative record, as two have been produced and medical records referenced are not included.

The decision to deny benefits should be well supported in the administrative record. In this case, there is a discrepancy with regard to the completeness of the administrative record and what was really provided to the doctors. Doctors note review of records not in the file. If Reliance does not have records referenced by the doctors, where are they and how did they come to be in the doctors' possession? More importantly, what do they say and were they ever considered by the Defendant? Such a material factual dispute precludes summary judgment. The Defendant's decision to deny coverage cannot be reasonable if it did not take into account available information.

There are also several conflicts within the record itself. The first of these conflicts comes

from the fact that the Defendant accepted the disability claim from Dr. Anderson after the July 22, 2002 incident. Then the Defendant sent Dr. Anderson's medical records to Dr. Hauptman for a peer review. Dr. Hauptman opined that "the medical records do not support impairment on the basis of any potential chronic underlying pain.' (AR 132).

However, Dr. Hauptman's report should be given no credence by this Court because several jurisdictions have found his opinions to be far from credible. *See generally*, Bowman v. Reliance Std. Life Ins. Co., 2003 U.S. Dist. LEXIS 4398 (N.D. Ill. March 31, 2003) ("Dr. Hauptman reported that Plaintiff's claim was based solely on pain, despite the objective evidence of a disability in the medical record. He also seemed to rely on a medical assessment from 1998, when it is clear that Plaintiff's condition was progressive and had deteriorated by 2000."); Conrad v. Reliance Standard Life Ins. Co., 292 F. Supp. 2d 233, 238 (D. Mass. 2003) ("The reports Dr. Hauptman generated betray a palpable bias in favor of rejecting the claim. Repeatedly, Dr. Hauptman's conclusions select for emphasis just one or two elements of a medical report, while ignoring additional facts and important context."); Smetana v. Reliance Standard Life Ins. Co., 2003 U.S. Dist. LEXIS 19564 (Sept. 30, 2003) ("The conclusion reached by Dr. Hauptman is in direct conflict with the opinions of the Plaintiff's physicians and carry some level of bias."); Omasta v. The Choices Benefit Plan, 352 F. Supp. 2d 1201, 1209 (D. Utah 2004) ("Dr. Hauptman's opinion . . . is not reasonably based in the record. [His] review consists of discounting all of the substantial information supporting Plaintiff's claim of disability."); Gunn v. Reliance Standard Life Ins. Co., 399 F. Supp. 2d 1095, 1102 n.5 (C.D. Cal. 2005) ("Reliance is the only insurance company for whom Dr. Hauptman works, and he derives approximately one-third of his income from his work with Reliance.").

It is clear after a review of the above cited case law that this Court can not give any deference to Dr. Hauptman's opinion. As a result Dr. Anderson's claim was denied on September 19, 2003 based on Dr. Hauptman's report. (AR 196). However, ERISA overturned this decision on December 10, 2003 based on an IME conducted on November 18, 2003. Therefore, even the Defendant does not support Dr. Hauptman's decision.

Another conflict manifests when the Defendant approved Dr. Anderson's request for a waiver of premium. Approval could only occur upon a finding of total disability. Approval was given on March 1, 2004. (AR 42). Dr. Anderson's claim for benefits was denied, but his request for a waiver was accepted because he met the definition of totally disabled. These inconsistencies highlight the fact that Reliance acted unreasonably when it denied a totally disabled individual benefits.

Perhaps the most disturbing abuse of discretion can be found in Dr. Bonner's opinion. Dr. Bonner was hired by Reliance to conduct an independent medical evaluation of Dr. Anderson on November 18, 2003. (AR 54-58). Dr. Bonner stated that Dr. Anderson has been restricted since July 10, 2002. In addition, Dr. Bonner found that Dr. Anderson was only able to stand for one to three hours and sit for only one to three hours. (AR 58). Dr. Bonner concluded that Dr. Anderson was disabled. (AR 58).

Then on March 30, 2004 another Reliance representative requested Dr. Bonner to be contacted regarding an additional evaluation of Dr. Anderson. (AR 353). Specifically, it stated that Marianne P. Lubercht an RN employee of Reliance interpreted Dr. Bonner's IME to limit Dr. Anderson's disability as "behaviorally based." (AR 353). The letter continued to state that Dr. Anderson underwent a psychiatric IME in March of 2004, which concluded that Dr.

Anderson was unimpaired. (AR 353). Sixteen days later Dr. Bonner changed his opinion. (AR 341).[9] Specifically, Dr. Bonner states that Dr. Anderson's psychiatric limitations delineated in a note of June 27, 2003 located in the medical records "was the only record documenting Dr. Anderson's inability to perform his gainful employment." (AR 341). The note stated that Dr. Anderson did not have an inability to stand, sit, walk, and drive. (AR 341). Dr. Bonner stated that he concurred with this evaluation. (AR 341)  However, in his original IME Dr. Bonner determined that Dr. Anderson was only able to stand for one to three hours and sit for only one to three hours. (AR 58).

This begs the question, what parts of the psychiatric report enlightened Dr. Bonner so that he would now say "Dr. Anderson has no physical impairment at this time to prevent him from practicing his usual employment as a physician." (AR 342). As stated above, the administrative record reflects that Reliance was confused by Dr. Bonner's opinions on December 9, 2003. In a letter to Dr. Anderson, it stated that the information obtained from the IME[10] was conflicting. (AR 72). The letter states that a Functional Capabilities Evaluation will be conducted. (AR 72). However, the record is devoid of this evaluation ever being administered to Dr. Anderson. Without this evaluation or examination of Dr. Anderson, Dr. Bonner completely reverses his finding of disability. Clearly, there is a factual dispute as to whether the medical experts were able to give a truly independent opinion regarding Dr. Anderson's condition. From a review of the Administrative record it would seem that the Defendant would do what was necessary to receive an opinion that was not favorable to coverage. This case must survive summary

---

[9] The result received by the complete change in opinion seems to have been forecast by Reliance, which on August 6, 2003 suggested the possibility of denial if it could rule out a mental or nervous disorder. (AR 147).

[10] Dr. Bonner IME November 18, 2003.

18

judgment for resolution of the factual disputes.

In addition, a doctor who specializes in pain never evaluated Dr. Anderson. It is RSD that prevents Dr. Anderson from being able to perform his occupation. However, of all the IMEs performed and peer reviews requested, an individual whom specializes in pain or pain management performed none. It would seem that this fact alone could reveal the unreasonableness of Defendant's decision.

## V. Conclusion

The Defendant has failed to follow the local rules that were designed to assist the courts in quickly decided which facts were undisputed. This complete failure on behalf of the Defendant is reason alone to preclude summary judgment. In addition, this motion is premature because there are outstanding discovery disputes, which could result in additional facts that could be essential to establishing the material factual disputes which must be resolved by the court. To withstand summary judgment the opponent must demonstrate that there are factual disputes, which would preclude the early termination of the litigation. In this case, the administrative record is rife with factual disputes, which prevent summary judgment. Additionally, the manner in which the Defendant has handled the decision to deny Dr. Anderson's benefits establishes the unreasonableness of that decision. For all the reasons stated above this Court should deny the Defendant's motion for summary judgment.

                                              ANDREW S. ANDERSON, Ph.D., M.D.
                                              By Counsel

TRICHILO, BANCROFT, McGAVIN,
HORVATH & JUDKINS, P.C.
3920 University Drive
Fairfax, Virginia 22030-0022
(703)385-1000 Telephone
(703)385-1555 Facsimile

_____
Steven W. Bancroft, Esquire
Dawn E. Boyce, Esquire
D.C. Bar No: 440010
Counsel for Plaintiff

### CERTIFICATE OF MAILING

I hereby certify that a true copy of the foregoing *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* was sent electronically on this 8th day of May, 2006, to:

Jean-Marie Sylla, Jr.
Taylor, Sylla & Agin, LLP
1220 Nineteenth Street, N.W., Suite 501
Washington, D.C. 20036

and mailed first class, postage prepaid on this 8th day of May, 2006, to:

Heather Holloway, Esquire
Rawle & Henderson, LLP
One South Penn Square
The Widener Buildling, 16th Floor
1339 Chestnut Street
    Philadelphia, PA 19107

_____
Dawn E. Boyce, Esquire